IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–01392–MDB

MEGAN JENKINS,

      Plaintiff,

v.

USAA CASUALTY INSURANCE COMPANY,

      Defendant.

---

## ORDER

---

      Plaintiff brings claims against Defendant for breach of the duty of good faith and fair dealing, breach of contract, breach of the duties set forth in Colo. Rev. Stat. § 10-3-115, and outrageous conduct. (Doc. No. 4 at 4-7.) Defendant has filed a partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the allegations in the Complaint do not support Plaintiff's claims for bad faith and outrageous conduct. (["Motion to Dismiss"], Doc. No. 11.) Plaintiff has responded in opposition to the Motion to Dismiss, and Defendant has replied. (["Response"], Doc. No. 17; ["Reply"] Doc. No. 23.) The Court considers the Motion to Dismiss pursuant to 28. U.S.C. § 636(c) and the Order of Reference. (Doc. No. 14.) For the following reasons, the Motion to Dismiss (Doc. No. 11) is **GRANTED**.

**BACKGROUND**

Plaintiff was rear-ended by Breanna Davis on December 1, 2017. (Doc. No. 4 at ¶¶ 7-9.)
At the time of the accident, Ms. Davis had liability insurance and Plaintiff settled for $25,000,
the applicable limit of Ms. Davis's policy. (*Id*. at ¶¶ 13-14.) Plaintiff alleges that she was entitled
to underinsured motorist ("UIM") benefits from Defendant, and on July 6, 2020, Defendant, by
and through USAA CI, issued a payment of $10,618.88. (*Id*. at ¶ 15.) The parties identify this as
the *Fisher* payment, and Defendant describes it as "the amount of undisputed economic damages
of Plaintiff's claim at that time[.]" (Doc. No. 11 at 2; *see also id*. at ¶ 15.)

On March 17, 2022, Plaintiff submitted a demand to USAA CIC for the remaining limits
under her USAA CIC policy, $89,381.12. (Doc. No. 4 at ¶ 18.) On March 25, 2022, Defendant
responded with a counteroffer of $20,000. (*Id*. at ¶ 19.) On April 4, 2022, Plaintiff countered at
$78,000. (*Id*. at ¶ 20.) On April 7, 2022, Defendant responded with $22,500. (*Id*. at ¶ 21.) On
April 18, 2022, Plaintiff issued a revised demand of $70,000. (*Id*. at ¶ 22.) That same day, USAA
CIC raised its offer to $25,000, and Plaintiff lowered her demand to $63,500. (*Id*. at ¶¶ 23-24.)
On April 19, 2022, Defendant again offered $25,000, stating "that $25,000 was their best offer at
that time." (*Id*. at ¶ 25.) Counsel for Plaintiff sent a letter on April 19, 2022, purportedly "giving
USAA the opportunity to continue settlement negotiations." (*Id.* at ¶ 26.) According to Plaintiff,
Defendant did not respond. (*Id.*)

This lawsuit was filed six (6) days later, on April 25, 2022. (Doc. No. 1-2.) Plaintiff
alleges four claims for relief, three of which Defendant moves to dismiss. (Doc. No. 11.)
Specifically, Defendant argues that the first claim for common law bad faith and the third claim
for statutory bad faith must be dismissed because this case presents nothing more than "a value

dispute as to the injuries Plaintiff received from a covered accident." (*Id.* at 1.) Defendant also seeks dismissal of the outrageous conduct claim, arguing Plaintiff "merely lists the elements of an outrageous conduct claim," and does not allege specific facts that demonstrate extreme behavior. (*Id.* at 11.)

In her Response, Plaintiff argues, first, that Defendant is judicially estopped from attacking the plausibility of the allegations in the Complaint because Defendant relied on those allegations to remove this case to federal court. (Doc. No. 17 at 1-4.) Plaintiff also argues that the Complaint "is permeated with supporting evidence relating to the contract and the negotiations in which USAA refused to pay the value of claim [sic] that Ms. Jenkins presented," (Doc. No. 6 at 14), and that Defendant's position is contrary to the rule that a value dispute is not a legitimate basis for unreasonable delay (Doc. No. 17 at 6-8). Finally, Plaintiff argues that she suffered compensable injury, due to Defendant's repeated refusals to pay the value of her insurance benefits, and whether or not that suffering rises to the level of egregious and outrageous conduct, is a question of fact to be resolved by a factfinder. (*Id.* at 12-13.)

## LEGAL STANDARD

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering whether to dismiss a claim, the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). In considering whether dismissal under Rule 12(b)(6) is appropriate, a court must "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

## I.    Judicial Estoppel

As a threshold matter, the Court considers Plaintiff's judicial estoppel argument. Plaintiff argues that the standard for both removal and pleading is plausibility, and therefore, Defendant is judicially estopped from attacking the plausibility of the allegations here because Defendant relied on those exact same allegations to remove this case to federal court. (Doc. No. 17 at 1-4.) In other words, Plaintiff argues that Defendant cannot, on the one hand, argue that the bad faith allegations and attendant treble damages are *sufficient* to meet the $75,000 diversity jurisdiction threshold, and on the other hand, argue that the same allegations are *insufficient* to survive a Rule 12(b)(6) challenge. (*Id.*)

"The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, has been accepted in Colorado[.]" *Est. of Burford v. Burford*, 935 P.2d 943, 947 (Colo. 1997). "The doctrine prevents a party from asserting inconsistent positions in the same or related litigation which may result in multiple recoveries for that party or defeat a

4

legitimate claim for recovery made by the opposition." *Id.* The Colorado Supreme Court has held that,

> at a minimum, the following five circumstances are required for the doctrine to apply: first, the two positions must be taken by the same party or parties in privity with each other; second, the positions must be taken in the same or related proceedings involving the same parties or parties in privity with each other; third, the party taking the positions must have been successful in maintaining the first position and must have received some benefit in the first proceeding; fourth, the inconsistency must be part of an intentional effort to mislead the court; and fifth, the two positions must be totally inconsistent-that is, the truth of one position must necessarily preclude the truth of the other.

*Id.* at 948. Moreover, the Colorado Supreme Court has warned that "[c]are should be taken not to overlook reasonable grounds for a party changing positions based on new information," and that "[c]ourts should exercise care in the application of judicial estoppel so as not to curtail or infringe upon the right and the accepted practice of a litigant to plead and argue inconsistent and alternate theories." *Id.*

Here, the Court does not see anything in Defendant's pleadings or otherwise to suggest that Defendant acted with intentional effort to mislead the Court. *See generally id.* (finding that inconsistent positions will be subject to judicial estoppel, only when, "the inconsistency" is "part of an intentional effort to mislead the court[.]"). Plaintiff argues that Defendant's contradiction is "knowing," because it "took more than a month to remove the case from state to federal court, and in its notice of removal, USAA cites *Dart Cherokee* and the 'plausible allegation' standard." (Doc. No. 17 at 4.) But "knowing," is not the applicable standard. Therefore, even if Plaintiff is correct about Defendant's general knowledge, it is not enough to satisfy the fourth requirement set out in *Burford*.

Additionally, the Court is persuaded by Defendant's argument that judicial estoppel does not apply because the amount in controversy is determined at the outset of litigation and irrespective of any defenses. (Doc. No. 23 at 2-3.) In other words, the possibility that a defendant may have a Rule 12(b)(6) defense to one or more claims does not impact a subject matter jurisdiction analysis. It follows then, that a defendant should be allowed to assert subject matter jurisdiction without compromising its Rule 12(b)(6) defense or any other defense. Indeed, to hold otherwise would—as Defendant argues—force a defendant "to choose between the statutory right to remove, and the procedural right to move to dismiss meritless claims where the effect may result in reducing the amount of recoverable damages[.]" (*Id.* at 2.) Forcing defendants to give up one right in order to access another is not in line with the doctrine's primary purpose, which is to avoid unfair results. *See Burford*, 935 P.2d at 947 (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (1981)).

And finally, the Court finds that Defendant's two positions—one taken in connection with removal, and one taken in connection with the Rule 12(b)(6) challenge—are not "totally inconsistent" such that "the truth of one position must necessarily preclude the truth of the other." *Id.* at 948. This is because the removal analysis concerns the plausibility of *defendant's* allegations in support of removal, *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), while the Rule 12(b)(6) analysis concerns the plausibility of *plaintiff's* allegations. Defendant's reliance on Plaintiff's Complaint for purposes of making its own plausible allegations does not necessarily speak to, or accept, the plausibility of each of Plaintiff's

allegations. Thus, even assuming all the other elements of judicial estoppel are satisfied, the fifth and final element is not, and judicial estoppel does not apply. *See Burford*, 935 P.2d at 948.

The Court will now consider Defendant's Rule 12(b)(6) challenge.

## II.     Common Law & Statutory Bad Faith

Plaintiff's first claim is for breach of the duty of good faith and fair dealing, or common law bad faith. (Doc. No. 4 at 4.) To prevail on a common law bad faith claim, a plaintiff must show that (1) an insurer's conduct was unreasonable under the circumstances, and (2) it acted with knowledge of, or reckless disregard for, its unreasonableness. *Am. Fam. Mut. Ins. v. Allen*, 102 P.3d 333, 342 (Colo. 2004).

Plaintiff's third claim is for unreasonable delay or denial of payment under Colo. Rev. Stat. § 103-1115. (Doc. No. 4 at 6.) The standard for reasonableness is the same as it is for common law bad faith, except that a statutory claim does not require the additional element of knowledge or reckless disregard. *Kisselman v. Am. Family Mut. Ins. Co.,* 292 P.3d 964, 975 (Colo. App. 2011) (The "burden of proving th[e] statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing."); *Vaccaro v. Am. Family Ins. Grp.,* 275 P.3d 750, 756 (Colo. App. 2012) ("While first-party bad faith principles require a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, . . . the statutory claim requires only that a first-party claim be denied without a reasonable basis.").

"The reasonableness of an insurer's conduct is measured objectively based on industry standards." *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011). And, while an insurer must properly investigate and reasonably review and evaluate the result of any such

investigation, *see Travelers Ins. Co.* v. *Savio*, 706 P.2d 1258, 1275 (Colo. 1985), "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 848 (Colo. 2018). Moreover, a disagreement about the amount of damages alone does not amount to bad faith, even if there were delays or disagreements in the handling of the claim. *Buchholtz v. Safeco Ins. Co*., 773 P.2d 590, 593 (Colo. App. 1993). This is because, "[u]nder Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'" *Vaccaro*, 275 P.3d at 759. But while fair debatability "weighs against a finding that the insurer acted unreasonably[,]" it "is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217-18 (Colo. App. 2010); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016) ("[U]nder Colorado law, fair debatability can be a relevant but not necessarily a determinative factor as to whether the insurer acted reasonably.").

"At the motion to dismiss stage . . . it is not for the Court to decide whether [the defendant's] conduct was reasonable as a matter of law or constituted bad faith." *Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co*., No. 17-CV-00777-RBJ, 2017 WL 6335656, at *8 (D. Colo. Dec. 12, 2017). However, the Court does have to determine whether Plaintiff's facts are sufficient to plausibly state a claim for bad faith. *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1201 (10th Cir. 2003) ("The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted"). In other words, the Court has a responsibility to ensure that the facts as pleaded are sufficient to state more than a simple value dispute. *See Zarevo v. State Farm Mut. Auto. Ins.*

*Co.*, No. 22-cv-00117-RMR-NYW, 2022 WL 1061910, *5 (D. Colo. Apr. 8, 2022) (finding the

court has a duty to determine whether plaintiff adequately stated a claim for relief, and granting a

motion to dismiss plaintiff's bad faith claims because "[a]t best, [p]laintiff's allegations

demonstrate that [the insurer] arrived at a lower valuation of [plaintiff's] claim than what

[p]laintiff believes is appropriate[.]")

Here, Plaintiff recounts the history of negotiations and alleges that "USAA stated that

$25,000 was their best offer at that time[;]" that "[i]t was clear that USAA was not going to

further negotiate in good faith[;]" that the final "settlement offer [was] inadequate and an

unreasonable measure of compensation[;]" and that "USAA's valuation of Jenkins' claim has

resulted in an unreasonably low settlement offer which does not assign a reasonable value to her

claim." (Doc. No. 4 at ¶¶ 25-26, 30-31.) Additionally, Plaintiff alleges that Defendant acted

unreasonably in the following respects:

- Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability is clear

- Improperly reducing the amount of benefits paid to the insured based upon biased and predictable reports of paid reviewers and case managers

- Failing to disclose to the insured the secret criteria USAA uses to pass judgement on claims for medical bills

- Subjecting its insured's underinsured motorist claims to a slanted, predictable and unfair review procedure designed to produce favorable results which USAA can use to avoid payment of legitimate claims

- Subjecting Plaintiff to USAA's secret profit goals which require and motivate USAA claims handlers to deny claims and/or reduce the amounts paid out on claims

- Subjecting Plaintiff to USAA's secret profit goals which require and motivate USAA claims handlers to deny claims and/or reduce the amounts paid out on claims

- Sacrificing Plaintiff's interests for security, fair treatment, and payment of injuries under her policy for the purpose of meeting USAA's quantifiable profit-making goals

(*Id.* at ¶ 34.) In other words, the crux of Plaintiff's allegations is that Defendant stopped negotiating, valued the claim lower than it should have, and did so because of USAA's ill-motivated general practice. These allegations, however, do not provide sufficient factual detail about Defendant's approach to *this* particular claim, *this* valuation, or *this* investigation. Instead, Plaintiff alleges in conclusory fashion that "USAA's valuation of Jenkins' claim has resulted in an unreasonably low settlement offer which does not assign a reasonable value to her claim[,]" and that "USAA has acted in bad faith towards their premium paying insured, Megan Jenkins." (*Id.* at ¶ 31.)

The Court does not overlook the fact that Plaintiff has alleged *some* specific facts about the circumstances of her case. For example, she alleges that she incurred $26,054.71 in medical expenses, that she settled with the at-fault driver for $25,000, and that she received a *Fisher* payment totalling $10,618.88. (*Id.* at ¶¶ 14-17.) But those specific facts simply demonstrate that Plaintiff has already been compensated for her medical expenses. Plaintiff also provides factual detail concerning the offers and counteroffers. (*Id.* at ¶¶ 18-25.) But those facts simply demonstrate that the parties disagree with respect to the amount of additional damages. Nowhere in the Complaint does Plaintiff provide any detail about the Defendant's investigation, valuation, or its approach to the negotiation. Plaintiff also does not provide facts to illustrate, for example, how or when Defendant misconstrued the policy, how or when Defendant violated industry

standards, or whether there were any demands that Defendant failed to address during the negotiation process. *See Carraway v. State Farm Fire & Cas. Ins. Co.*, No. 21-cv-03201-PAB-SKC, 2022 WL 4467035, at *7-8 (D. Colo. Sep. 26, 2022) (finding boilerplate and conclusory allegations were insufficient to state a claim for bad faith). Indeed, accepting Plaintiff's alleged facts as true, it appears Defendant was negotiating based on the information available to it at the time, which is appropriate. (*See* Doc. No. 4 at ¶ 25 (alleging that Defendant described its last offer as "their best offer *at that time*" (emphasis added))); *see Schultz*, 429 P.3d at 848 ("[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."). And while the Complaint alleges that "[i]t was clear that USAA was not going to further negotiate in good faith[,]" (Doc. No. 4 at ¶ 26), that allegation is not supported by any factual detail, or alleged statements made by Defendant, or a description of Defendants' conduct, such that the Court can infer Defendant was acting contrary to information it had at the time. In short, the Court finds Plaintiff's bad faith allegations are conclusory and do not provide sufficient detail to survive this Rule 12(b)(6) challenge. *Carraway*, 2022 WL 4467035, at *7-8.

## III.   Outrageous Conduct

In Colorado, a plaintiff will prevail on a claim of outrageous conduct if they can show: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused plaintiff to suffer severe emotional distress." *McCarty v. Kaiser–Hill Co.*, 15 P.3d 1122, 1126 (Colo. App. 2000), *cert. denied* (Jan. 2001).

Plaintiffs who bring an outrageous conduct claim must meet a very high standard. *See Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970) (a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *see also Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 129 (Colo. App. 1998) (stating that "[a] claim based upon outrageous conduct . . . requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[,]'" and "[i]t requires that the conduct be undertaken recklessly or with an intent to cause the plaintiff severe emotional distress") (quoting *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo.1988)). Plaintiff is correct that it is for a factfinder to resolve whether an insurer acted so egregiously that it meets the high standard for outrageous conduct. (Doc. No. 17 at 12.) But the claim can only reach the factfinder if a plaintiff first pleads sufficient facts, that if true, would amount to such egregious conduct. *See Proffitt v. Cornuke*, No. 03-cv-00810JL, 2005 WL 2171860, at *2 (D. Colo. Sept. 7, 2005) (holding plaintiff's allegations and conclusory assertions about "extreme and outrageous conduct" insufficient to support a claim for outrageous conduct).

Here, Plaintiff has not set forth sufficient facts to support an outrageous conduct claim. Other than a few conclusory allegations that Defendant was unreasonable in its valuation, and general allegations about Defendant's ill-intended practices, the Complaint does not allege facts that demonstrate outrageous conduct in connection with *this* claim. At best, Plaintiff alleges that "Defendant's conduct of delaying benefits to Plaintiff was extreme and outrageous and an abuse of a position in which Defendant USAA has actual or apparent authority to affect Plaintiff's

interests[,]" and "Defendant's outrageous conduct may be inferred from the misuses of power and authority inherent in the relationship of the insurer and insured." (Doc. No. 4 at ¶¶ 52-53.) In addition to being conclusory, those allegations do not speak to the Defendant's conduct in connection with this particular claim, nor do they provide facts or details from which to infer that something about Defendant's conduct in this case violated the bounds of decency, or can be viewed as atrocious or extreme. The Court also has serious doubts as to whether Plaintiff sufficiently alleged the other elements of an outrageous conduct claim, but it does not need to reach those elements, because Plaintiff has failed to plausibly allege the first element.[1]

Accordingly, it is

**ORDERED** that the "Defendant USAA CIC's Partial Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 11) is **GRANTED**.

DATED: March 27, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[1] Contrary to Plaintiff's arguments in the Response, *Rugg* and *Munoz* do not save the outrageous conduct claim. (Doc. No. 17 at 11-13.) *Rugg* is distinguishable because it concerned a gym membership where defendant continued to demand payments from plaintiff, and defendant allegedly invaded plaintiff's privacy, harassed her, pressured her, and caused her serious distress. *Rugg*, 476 P.2d at 754. And *Munoz* is not helpful to Plaintiff's claim because there the jury found sufficient evidence of outrageous conduct, and on appeal the defendant did "not question the legal sufficiency of that evidence." *Munoz,* 968 P.2d at 130.